# In the United States Court of Federal Claims

No. 01-39L

(Filed August 28, 2008)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **WALTER B. FREEMAN,** | * |
| | * **Takings; Suspension of** |
| Plaintiff, | * **Proceedings; Exhaustion of** |
| | * **Administrative Remedies;** |
| v. | * **Doctrine of Finality;** |
| | * **Inadequacy of Administrative** |
| **THE UNITED STATES,** | * **Proceedings** |
| | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

      *Richard Meritt Stephens*, Bellevue, Washington, attorney of record for plaintiff, Walter B. Freeman.

      *Terry M. Petrie*, Department of Justice, Washington, D.C. with whom was **Assistant Attorney General Ronald J. Tenpas**, for defendant. **Brad Grenham**, Department of the Interior and **Holly McLean**, Department of Agriculture.

## OPINION & ORDER

      *Futey,* **Judge**.

      This matter is before the Court on Plaintiff's Motion For Conditions, as well as Defendant's Amended Response and Plaintiff's Reply. Plaintiff requests that this Court place conditions on the continued suspension of proceedings. Specifically, plaintiff asks that this Court order defendant to reimburse plaintiff $108,675.00, the amount plaintiff has allegedly paid in maintenance fees for the claims at issue in this case since this matter was remanded to the Department of Interior ("DOI") in 2001, and to reimburse plaintiff for future maintenance fees until the suspension of proceedings is lifted.

      Plaintiff argues that the continued collection of maintenance fees by the government while the case remains pending before the DOI places the burden of the delay disproportionately upon plaintiff. Plaintiff points to the fact that proceedings before this Court have been suspended for seven years, and that the continued

suspension is the result of defendant's litigation strategy - one that plaintiff has opposed.

Defendant opposes plaintiff's motion on the basis that conditions on the continuing suspension of proceedings are both "inappropriate and unacceptable." Specifically, defendant contends that this Court does not have the authority to impose conditions upon the stay because there is no provision under the Tucker Act that authorizes a claim for maintenance fees, and this Court may not act in equity. Moreover, defendant argues that plaintiff overstates the burden of paying the maintenance fees and points to the fact that the proceedings before the DOI are legitimate and authorized.

1.   Background

On January 22, 2001, plaintiff Walter B. Freeman filed a complaint in this Court alleging that the United States, through its Forest Service, has taken plaintiff's rights in mining claims in violation of the Fifth Amendment by denying plaintiff access and prohibiting mining of the claims. Plaintiff alleged that he is the owner of 161 valid mining claims, primarily for the mining of nickel, in Oregon, that he has applied for a patent for 151 of those claims, and that he has also applied for approval of a plan of operations to mine the claims.

Significant for the purposes of this motion, plaintiff is required to pay an annual maintenance fee to the Secretary of the Interior on each mining claim. *See* 30 U.S.C. § 28f (2008).[1] Plaintiff alleges he has paid $124,775.00 in maintenance fees since the complaint in this matter was filed in this Court, $108,675.00 of which was paid following the suspension of proceedings in this Court.

The proceedings in this Court were stayed on October 10, 2001, when the case was remanded to the DOI to determine the validity of plaintiff's mining claims. Following remand, the Board of Land Management ("BLM") prepared a mineral report evaluating plaintiff's mining claims. On April 2, 2003, plaintiff moved to lift the stay of proceedings, contending that a validity determination by the BLM is not a jurisdictional prerequisite. The Court agreed with plaintiff that a BLM validity determination is not a jurisdictional prerequisite, but denied plaintiff's motion on the basis that the BLM has primary jurisdiction to conduct a validity determination.

---

[1] The maintenance fee is due on September 1 of each year and increased from $100.00 per claim to $125.00 per claim in 2005. *See* C.F.R. § 3834.22 (2003); 43 C.F.R. § 3830.21 (2007).

On March 6, 2005, the government instituted contest proceedings before the Office of Hearings and Appeals ("OHA").[2] Following discovery, Administrative Law Judge ("ALJ") Harvey Sweitzer presided over a five-week hearing, beginning March 14, 2007, during which time he raised the question of jurisdiction *sua sponte*. On August 10, 2007, the ALJ ruled that he was without jurisdiction to determine the validity of plaintiff's mining claims as of the dates requested by the BLM. The government filed an interlocutory appeal with the Interior Board of Land Appeals ("IBLA") on August 30, 2007.

On March 25, 2008, plaintiff moved this Court for relief from the suspension of proceedings or, alternatively, for conditions to be imposed upon the stay. On May 7, 2008, following briefing by both parties but prior to a ruling by this Court, the IBLA issued an opinion reversing the ALJ and finding that the OHA does indeed have jurisdiction to determine the validity of plaintiff's mining claims. Plaintiff withdrew its Motion For Relief From Suspension Of Proceedings on the same day; Plaintiff's Motion For Conditions, however, remains pending before this Court.

2.   Discussion

   A.   *Jurisdiction*

The jurisdiction of the United States Court of Federal Claims is set forth in the Tucker Act. 28 U.S.C. § 1491 (2007). Under the Tucker Act, the court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. § 1491(a)(1). The Tucker Act is jurisdictional only, and "does not create any substantive right enforceable against the United States for money damages." **United States v. Testan**, 424 U.S. 392, 398 (1976); **Tippett v. United States**, 185 F.3d 1250, 1254 (Fed. Cir. 1999). Rather, the Tucker Act "merely confers jurisdiction upon [this court] whenever the substantive right exists." **Testan**, 424 U.S. at 398. Here, plaintiff's takings claims are founded upon the Fifth Amendment of the United States Constitution; therefore, jurisdiction is proper.

---

   [2] On July 21, 2008, plaintiff filed a motion before the OHA amending its answer to admit the contest charge of invalidity as to 50 of the mining claims. The BLM will be required to refund the maintenance fees paid on those claims subsequent to the date the claims are declared invalid.

B.     *Suspension of Proceedings*

It is well established that every trial court has the power to stay its proceedings, which is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." **Landis v. N. Am. Co.**, 299 U.S. 248, 254 (1936). Moreover, "[w]hen and how to stay proceedings is within the sound discretion of the trial court." **Cherokee Nation v. United States**, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing **Landis**, 299 U.S. at 254-55). This does not mean that the trial court's power is unlimited; the stay must be "within the bounds of moderation." **Landis**, 299 U.S. at 256.

The Federal Circuit has identified three guidelines to assist trial courts when deciding whether and how to stay a case. The paramount obligation, overarching the other two, is the "court's . . . obligation to exercise jurisdiction timely in cases properly before it." *See* **Commonwealth Edison Co. v. United States**, 46 Fed. Cl. 29, 34 (2000) (citing **Cherokee Nation**, 124 F.3d at 1416). Additionally, "a trial court must . . . identify a pressing need for the stay;" and "the court must . . . balance interests favoring a stay against interests frustrated by the action." **Id**.

Here, the court's "paramount obligation to exercise jurisdiction timely" is of primary concern. **Id**. There was a pressing need for the stay at the time it was initiated: a validity determination of the mining claims is necessary to establish a compensable property interest, and a compensable property interest is a necessary element of a Fifth Amendment takings claim. *See* **Best v. Humboldt Placer Mining Co.**, 371 U.S. 334 (1963); **Cameron v. United States**, 252 U.S. 450, 456 (1920); **Holden v. United States**, 38 Fed. Cl. 732, 736 (1997). The BLM has primary jurisdiction to determine the validity of mining claims; remand to the BLM for this purpose therefore necessitated a stay of proceedings in this Court. Morever, the interests of both parties were served by obtaining a BLM validity determination of the mining claims when proceedings in this case were originally suspended in 2001.

Nevertheless, neither party - nor the Court - expected the validity determination and corresponding suspension of proceedings to last seven years. In 2003, plaintiff unsuccessfully moved this Court to lift the stay of proceedings because it was disappointed with BLM's progress. In response to plaintiff's motion, defendant represented that the validity examination was to be completed by fall 2004. *See* Order of May 8, 2003 at 5 n.9 (No. 01-39L). Five years later, following defendant's initiation of contest proceedings in 2005, proceedings before the BLM remain unresolved. Remand to the DOI for a validity determination of the mining claims is, however, a legitimate and expected proceeding in a case involving mining claims. Plaintiff should reasonably have expected to continue payment of maintenance fees, as required by law, during the validity determination of those

claims. The issue becomes, therefore, whether this Court may or should act to reduce the burden placed on plaintiff due to the lengthy duration of the administrative proceeding.

      C.    *Administrative Proceedings: The Doctrines of Exhaustion and Finality*

It is a well accepted principle that administrative remedies must be exhausted by parties prior to obtaining judicial relief where administrative remedies are specifically mandated by Congress or a contractual provision. *See* ***McCarthy v. Madigan***, 503 U.S. 140, 144-45 (1992); ***Colo. Dep't of Human Servs. v United States***, 74 Fed. Cl. 339, 345 (2006) (citing ***Myers v. Bethlehem Shipbuilding Corp.***, 303 U.S. 41, 50-51 (1938)). Where the court is considering a takings claim, however, there is no general duty of exhaustion; rather, the doctrine of finality applies. *See* ***PDR, Inc. v. United States***, 78 Fed. Cl. 201, 207 (2007) (citing ***Devon Energy Corp. v. United States***, 45 Fed. Cl. 519, 529 (1999)). For this Court to adjudicate a takings claim, the administrative agency must reach a "final, definitive position regarding how it will apply the regulations at issue to the particular land in question." ***Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City***, 473 U.S. 172, 191 (1985); *see also* ***Cristina Inv. Corp. & Cris Realms, Inc. v. United States***, 40 Fed. Cl. 571, 578 (1998).

The doctrines of finality and exhaustion are similar, yet conceptually distinct. *See* ***Id***. at 192. The doctrine of finality "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury;" whereas the doctrine of exhaustion "generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." ***Id***. at 193. The policies underlying the two doctrines overlap: both doctrines serve "the twin purposes of protecting administrative agency authority and promoting judicial efficiency." ***McCarthy***, 503 U.S. at 145; *see also* ***Williamson County***, 473 U.S. at 193.

The requirement of finality of an administrative remedy promotes judicial efficiency by allowing an agency the "opportunity to correct its own errors," which may moot the need for judicial relief. ***Id***. Additionally, and particularly significant for our purposes, a finality requirement promotes judicial efficiency by avoiding piecemeal appeals. ***Id***. (citing, *e.g.*, ***Parisi v. Davidson***, 405 U.S. 34, 37 (1972); ***McKart v. United States***, 395 U.S. 185, 195 (1969)).

Here, plaintiff has requested that this Court order defendant to reimburse plaintiff the total amount it has paid in maintenance fees since this matter was remanded to DOI for a validity determination in 2001, and to reimburse plaintiff for

any future maintenance fees paid until the suspension of proceedings is lifted. As noted above, however, payment of the maintenance fees is required by law in order for plaintiff to retain its property interest in the mining claims. If this Court were to grant plaintiff's motion and order defendant to reimburse plaintiff for maintenance fees prior to a validity determination, a later finding by the ALJ that plaintiff's claims are valid may necessitate a subsequent motion requesting that the Court order plaintiff to refund the maintenance fees previously reimbursed to plaintiff by the government. Clearly, such a convoluted result discourages judicial efficiency, rather than promotes it. On this basis, the Court must deny plaintiff's request for reimbursement.

The seven-year duration of the validity determination in this case does, however, raise the question of whether the Court is satisfying its primary obligation to exercise timely jurisdiction over cases properly before it. The other aim of the finality doctrine is to protect administrative agency authority by allowing the "agencies, not the courts, . . . primary responsibility of the programs that Congress has charged them to administer." ***McCarthy***, 503 U.S. at 145 (citing ***McKart***, 395 U.S. at 194). Nonetheless, the Court may abandon the finality requirement where the "litigant's interests in immediate judicial review outweigh the government's interests in the . . . administrative autonomy that the exhaustion [and, similarly, the finality] doctrine is designed to further." ***Id***. at 146 (quoting ***West v. Bergland***, 611 F.2d 710, 715 (8th Cir. 1979)).

The inadequacy of administrative procedures is one circumstance in which the interests of the individual weigh heavily against the government's interests in the finality or exhaustion of administrative procedures. ***McCarthy***, 503 U.S. at 146-48; ***Colo. Dep't of Human Servs.***, 74 Fed. Cl. at 346. An "unreasonable or indefinite time frame for administrative action" may render an administrative procedure inadequate. ***Id***. at 147 (citing ***Gibson v. Berryhill***, 411 U.S. 564, 575 n.14 (1973) (administrative remedy deemed inadequate "most often . . . because of delay by the agency"); ***Walker v. Southern R. Co.***, 385 U.S. 196, 198 (1966) (possible delay of 10 years in administrative proceedings makes exhaustion unnecessary); ***Smith v. Ill. Bell Tel. Co.***, 270 U.S. 587, 591-92 (1926) (claimant "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief")). Even where administrative procedures have been significantly delayed, however, if "there remains a viable and ongoing" administrative process, administrative relief is not inadequate. ***Newport News Shipbuilding & Dry Dock Co. v. United States***, 7 Cl. Ct. 549, 555 (1985).

Here, there is no question that the seven-year delay of the BLM's validity determination is significant. Nonetheless, the administrative process is viable and on-going, as was recognized by plaintiff when it withdrew its Motion For Relief From Suspension Of Proceedings. Because the doctrine of finality applies to

plaintiff's takings claims, this court may resume jurisdiction once the ALJ decides upon the validity of plaintiff's mining claims, regardless of any subsequent administrative appeals. If, however, the ALJ fails to reach a decision within a reasonable period of time, this Court will entertain a motion to resume jurisdiction of this case in order to reconsider plaintiff's interest in obtaining prompt access to a judicial forum, as well as to fulfill the court's obligation to exercise timely jurisdiction over cases properly before it.

3.  Conclusion

For the above-stated reasons, Plaintiff's Motion For Conditions is hereby DENIED. Additionally, the following is ordered:

1.  The court establishes a reasonable time frame of seven-months from the date of this Order for the ALJ to render a decision in this matter. If such decision is not rendered prior to March 30, 2009, plaintiff may file a renewed motion to lift the stay of proceedings.

2.  If the ALJ renders a decision prior to March 30, 2009, the parties are directed to file a joint status report concerning further proceedings within 30 days.

IT IS SO ORDERED.

                                                                s/Bohdan A. Futey
                                                                **BOHDAN A. FUTEY**
                                                                      **Judge**