# In the United States Court of Federal Claims

No. 01-39L
(Filed: September 30, 2015)

| | |
|---|---|
| WALTER FREEMAN, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Partial Motion to Dismiss for Lack of Jurisdiction; RCFC 12(b)(1); Fifth Amendment Takings; Lack of Ripeness; Failure to Establish Futility |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) |

*Richard Stephens*, Stephens & Klinge, LLP, Bellevue, WA, for plaintiff.

*Terry Petrie*, Environment and Natural Resources Division, United States Department of Justice, Denver, CO, with whom was John C. Cruden, Assistant Attorney General, Washington, DC for defendant.

*Roger Flynn*, Western Mining Action Project, Lyons, CO, for amici curiae.

**OPINION GRANTING THE GOVERNMENT'S MOTION TO DISMISS COUNT V OF THE AMENDED COMPLAINT**

**FIRESTONE**, *Judge*.

Pending before the court is the United States' motion to dismiss the claims of plaintiff RNR Resources LLC ("RNR") set forth in Count V the amended complaint in the above-captioned case.[1] The named plaintiff, Walter Freeman, is the sole member of

---

[1] The amended complaint, filed on April 19, 2013, added as plaintiffs RNR, Michelle L. Harris, Sandra Lee Fincher, and James R. Omundson. Am. Compl. ¶¶ 4-6. According to the amended

RNR.  At issue in this litigation is the alleged Fifth Amendment taking of mining claims in the Rogue River Siskiyou National Forest in Southern Oregon.  The mining claims were first made by Mr. Freeman.  Those claims were declared null and void by the government in 2009, and in 2011 Mr. Freeman filed new mining claims for essentially the same locations in the name of RNR.

Mr. Freeman has alleged a taking of the mining claims that were made in his name and that were declared null and void by the government.  As discussed in detail below, Mr. Freeman's taking claim has been stayed pending the outcome of litigation in the United States District Court for the District of Columbia upholding the government's decision to void Mr. Freeman's mining claims.[2]

This motion deals with the mining claims made in RNR's name.  RNR alleges that the government took those mining claims when the Forest Service refused to allow RNR to mine the claims after RNR filed a plan of operations.[3]  In order to "minimize adverse environmental impacts on National Forest System surface resources," 36 C.F.R. § 228.1, the Forest Service requires mining claimants to obtain approval of a "plan of operations" before undertaking mining activities that could disturb surface resources in a national

---

complaint, Ms. Harris, Ms. Fincher, and Mr. Omundson have since issued quitclaim deeds to RNR, but were added as plaintiffs "because of the Anti-Assignment Act."  Id. ¶ 41.

[2] In Freeman v. U.S. Dep't of the Interior, 83 F. Supp. 3d 173, 177 (D.D.C. 2015) ("Freeman II"), the district court upheld the government's decision to void the claims.  That decision is pending on appeal before the United States Court of Appeals for the District of Columbia Circuit.

[3] The process for obtaining permission to mine on federal lands within a national forest and for ultimately obtaining title to those lands if a valuable mineral deposit is discovered is discussed at length in Freeman v. U.S. Dep't of the Interior, 37 F. Supp. 3d 313 (D.D.C. 2014) ("Freeman I").

2

forest. In the amended complaint, RNR alleges that by "refusing to approve the new Plan of Operations," the Forest Service "has taken all of the rights Plaintiffs owns in these new mining claims and they are entitled to just compensation as provided in the Fifth Amendment to the United States Constitution. Am. Compl. ¶ 83.

In its motion to dismiss, the government argues that RNR's takings claim is not ripe for review because the Forest Service has not yet disapproved RNR's plan of operations. According to the government, the Forest Service has not issued a final decision with regard to RNR's plan of operation because RNR has not submitted all of the information needed for the Forest Service to approve or disapprove RNR's application. The government further alleges that RNR cannot demonstrate that completing its application to the Forest Service would be futile. In this connection, the government alleges that the takings claim also is not ripe because RNR has not yet applied to the Department of the Interior ("DOI") for permission to use approximately 20 acres of DOI lands administered by the Bureau of Land Management ("BLM") that are adjacent to the mining area and that RNR plans to use to process the minerals. The Forest Service argues that it must take into account the environmental impacts on Forest Service lands from RNR's proposed operations on BLM lands in making its decision on RNR's plan of operation.

For the reasons stated below, the court agrees with the government that RNR has not filed a completed application and that it would not be futile for RNR to complete the application process with the additional information requested by the Forest Service. Because the Forest Service has not yet ruled on RNR's application, the claim is not ripe

for review and this court lacks subject matter jurisdiction over RNR's claims. Therefore, the government's motion to dismiss Count V of the amended complaint pursuant to Rule 12(b)(1) is **GRANTED**.

**I.     BACKGROUND**

**A.     Previous Claims and Related Litigation**

The original complaint in this case was filed in 2001.[4]  It alleged a Fifth Amendment taking of rights associated with Mr. Freeman's mining claims in the Rogue River Siskiyou National Forest for the period between 1994 and 2000. This court's resolution of those Fifth Amendment takings claims was stayed to allow the DOI to determine whether the mining claims were "valid" during the relevant time periods. The DOI found that the claims were invalid and void on the grounds that Mr. Freeman could not establish a discovery of valuable minerals, a decision upheld by the Interior Board of Land Appeals ("IBLA"). See Freeman, 179 Interior Dec. 341, 386-88 (IBLA 2010). Mr. Freeman appealed the IBLA's decision to the United States District Court for the District of Columbia.

In Freeman I, the district court upheld the DOI's jurisdiction to determine the validity of Mr. Freeman's mining claims. 37 F. Supp. 3d at 317. In Freeman II, the district court upheld the IBLA's finding that Mr. Freeman failed to make a discovery of a valuable mineral deposit as of the dates of the alleged taking. Freeman II, 83 F. Supp. 3d

---

[4] This case was originally assigned to Judge Bohdan A. Futey, and was reassigned to Judge Lawrence J. Block on August 29, 2013. The case was reassigned to this court on June 5, 2015. Oral argument on the government's present motion to dismiss was held on July 8, 2014.

at 177.  Freeman II is currently on appeal to the United States Court of Appeals for the District of Columbia.  Freeman v. U.S. Dep't of the Interior, No. 15-cv-5140 (D.C. Cir. filed May 20, 2015).

### B.   RNR's Claims and Application to the Forest Service

In 2011, after the DOI found Mr. Freeman's original claims invalid for lack of valuable mineral discovery, and during the pendency of the litigation in the district court, RNR "located eight new mining claims covering the same minerals and 1280 acres of the same area where the mining claims declared invalid are located."  Am. Compl. ¶ 38.  RNR alleges in the amended complaint that regardless of whether Mr. Freeman's mining claims contained a valuable mineral deposit for the years in question, RNR had a valuable mineral discovery in 2011.  Id.[5]

On June 2, 2011, RNR filed a plan of operations with the Forest Service.  The project description indicates that RNR intends to mine 60,000 tons of nickeliferous limonite iron ore.  See Def.'s Mot. to Dismiss Ex. 4A ("Plan of Operations").  RNR represents that the ore contains commercially recoverable amounts of nickel, chromium, and iron.  The application indicates that the mining will disturb approximately five acres and will require the construction of new roads and two stream crossings within the

---

[5] At oral argument, the parties informed the court that they would prefer the court to rule on the present motion to dismiss, which deals only with RNR's takings claim, despite the pendency of related litigation regarding the validity Mr. Freeman's these claims in the D.C. Circuit.  When asked what the effect on this case would be if the D.C. Circuit reversed the district court and found Mr. Freeman's original claims were valid, plaintiff's counsel could not give a definitive answer.  However, since this court has determined that dismissal on ripeness grounds is warranted at this time, the ultimate outcome of the case in the D.C. Circuit is not relevant.

Forest. The application includes attachments addressing Forest Service regulations with regard to protecting air quality, water quality, and solid waste disposal, among other issues.

On about June 5, 2011, Kevin Johnson, the Area Mining Geologist for the Rogue River-Siskiyou and Freemont-Winema National Forests, received a copy of the RNR plan and was directed by District Ranger Roy Bergstrom to evaluate the proposal. Def.'s Mot. to Dismiss Ex. 3 ("Johnson Declaration"), at ¶ 5.

On June 20, 2011, Ranger Bergstrom had a telephone conversation with Mr. Freeman regarding RNR's plan and the possibility of RNR conducting a bulk sample of minerals on the mining claims covered by the proposed plan. Def.'s Mot. to Dismiss Ex. 4 at ¶ 7. Ranger Bergstrom suggested that Mr. Freeman submit a written proposal because bulk sampling was not included in RNR's proposed plan. Id. According to Ranger Bergstrom, Mr. Freeman also spoke with Mr. Johnson about RNR's plan on June 20, 2011. Id.

On October 24, 2011, counsel for Mr. Freeman and RNR wrote a letter to Ranger Bergstrom inquiring about the status of the RNR plan review. Ranger Bergstrom responded by letter dated November 17, 2011, explaining that the Forest Service would need more time to evaluate the RNR plan because of the complexity of the issues and because it was a very busy season. Def.'s Mot. to Dismiss Ex. 4B.

On March 13, 2012, Mr. Johnson provided his review of the RNR plan to Ranger Bergstrom. Def.'s Mot. to Dismiss Ex. 4C. Mr. Johnson concluded that RNR's plan was not reasonable and did "not represent the logical or sequential step in the development of

6

this deposit in a mine of this size and scope." Id. at 3 (citing Forest Service Handbook 2809.15, Chapter 10). Mr. Johnson recommended that the proposed plan of operations "be returned to Mr. Freeman with the suggestion that he submit a proposal for bulk sampling and construction of a pilot-prototype plant that can process the bulk sample so that it can be determined if production scaled mining and smelting is feasible." Id.

On July 24, 2012, Ranger Bergstrom informed Mr. Freeman by letter that the RNR plan was "not reasonable and therefore will not be processed until [RNR] provide[s] additional information and changes to the plan as outlined in Mr. Johnson's memorandum." Def.'s Mot. to Dismiss Ex. 4D ("July 24, 2012"). According to the letter, "the most compelling [reason why the application could not be processed] is the lack of a pilot processing plant that would be part of a logical sequence in scaling up to a full production processing facility." Id. at 1. Ranger Bergstrom also noted that RNR had not submitted a plan of operations for constructing a processing plant to the BLM, despite the fact that RNR's plan included a processing plant to be located on land managed by the BLM. Id. Ranger Bergstrom informed Mr. Freeman that the BLM had requested information from Mr. Freeman in July of 2011, but had not received anything. Id. In closing, Ranger Bergstrom "suggest[ed] that [Mr. Freeman] reconsider [RNR's] proposal and submit a new plan of operations . . . with more detail on the various activities necessary to conclude that the activities are part of a logical sequence leading to full scale production." Id.

On September 5, 2012, counsel for Mr. Freeman and RNR replied to the July 24, 2012 Letter, noting that Mr. Freeman and RNR were "unsure whether the [July 24, 2012

7

Letter] is appealable," but stated that "[i]n the event that the decision is appealable," Mr. Freeman and RNR wished to file a "Notice of Appeal." Def.'s Mot. to Dismiss Ex. 6. On September 19, 2012, the Forest Service responded and stated that the July 24, 2012 Letter did "not constitute an appealable decision pursuant to 36 CFR § 251.82(a) because it does not issue, deny or administer a written instrument to occupy National Forest System lands"; but noted instead that the July 24 Letter said the proposed plan of operations could not be processed because the District Ranger lacked sufficient information to evaluate it. Def.'s Mot. to Dismiss Ex. 7.

On September 18, 2012, Ranger Bergstrom and Mr. Johnson met with Mr. Freeman to discuss steps Mr. Freeman would need to take to address the concerns raised by Ranger Bergstrom in the July 24, 2012 Letter, including the need for a pilot processing plant. Def.'s Mot. to Dismiss Ex. 4 ¶ 16 ("Bergstrom Decl."). Mr. Freeman stated that he had satisfied himself that RNR's proposed project was technically possible and that he did not need to bother with the construction of a pilot plant. Id. He made it clear that if he did construct a pilot plan that it would be only to satisfy the Forest Service. Id. He wanted Ranger Bergstrom or Mr. Johnson to tell him how large a sample the pilot plant would have to process to satisfy the Forest Service. Id. In response, Mr. Freeman was told that it was not up to the Forest Service to tell him how much material he would need to process in a pilot plant, but that it was his responsibility to show that it was feasible to ramp up the process from a pilot plant to a production capacity. Id. The Forest Service explained that any Forest Service decision had to ensure that

environmental impacts were analyzed pursuant to the National Environmental Policy Act (NEPA) and Forest Service regulations.  Id.

On October 3, 2012, counsel for Mr. Freeman and RNR sent a letter to the Forest Service's Regional Forester, Kent Connaughton, stating that while still "unsure whether the [July 24, 2012 Letter] is appealable," they were going to file the appeal anyway "[b]elieving it may be appealable."  Def.'s Mot. to Dismiss Ex. 8.  On October 19, 2012, Mr. Connaughton responded and affirmed what the Forest Service had said: the July 24 Letter was not an appealable decision pursuant to 36 C.F.R. § 251.82(a).  Def.'s Mot. to Dismiss Ex. 9.  Mr. Connaughton reiterated that the plan of operations had not been denied and that an appeal would only be appropriate after RNR had submitted a complete plan of operations that was evaluated and denied.  Id.

On June 19, 2013, shortly before the pending motion to dismiss was filed, Mr. Johnson sent another memorandum to Ranger Bergstrom outlining the deficiencies in RNR's proposed plan of operations.  The memorandum identifies the issues RNR would need to address before the Forest Service would approve or disapprove RNR's plan.  Def.'s Mot. to Dismiss Ex. 10.  The memorandum notes, among other deficiencies, that RNR's plan does not include details regarding construction of the road and the proposed stream crossings to be used to transport the product from the mines.  It also notes that if RNR does not submit a plan of operations to BLM regarding the construction a processing plant on their land, the BLM will not be able to provide an analysis of the potential effects to Forest Service lands.  Without that information, the Forest Service will not be able to evaluate the environmental issues associated with building a

processing facility adjacent to a national forest.  The memorandum reiterates the value of building a pilot processing facility to determine whether the minerals at issue can be profitably developed.  In this connection, the memorandum notes that one of RNR proposed products, ferronickel (as opposed to a master alloy of nickel, iron, and chrome to be sold as stainless steel), could generate hazardous waste and that RNR's plan does not include details regarding where and how that waste would be properly stored.  In the concluding section of the memorandum, Mr. Johnson recommends that Mr. Freeman be notified that RNR's "proposed plan of operations is incomplete and cannot be further processed because it does not comply with the content requirements of 36 CFR § 228.4."  The memorandum further states:

> Before the Forest Service can process the proposed plan, [RNR] needs to submit a revised plan that addresses the deficiencies identified above. [RNR] also needs to submit a plan of operation to the Bureau of Land Management with the kind of information I have discussed above for the BLM-based operations, so that analysis of [RNR's] processing and smelting facility can be completed and the potential effects to the National Forest System land determined.

Def.'s Mot. to Dismiss Ex. 10.

Mr. Freeman contends in his declaration that none of the Forest Service's objections to RNR's plan are justified and that none of the deficiencies identified in the June 19, 2013 memorandum have merit.  Pl.'s Opp. Ex. 1.  He contends that a separate pilot plant is not needed because he proposes to build a small plant that will fit the purposes of pilot testing.  He also contends that none of the environmental issues are valid and that he does not need BLM's permission before the Forest Service can process

[RNR's] application. He concludes by stating his belief that the Forest Service never intends to make a final decision:

> All of the issues [the June 19, 2013 memorandum] addresses were either hashed through in regard to my prior 1993 Plan of Operations or in the mineral contest proceeding. All of these issues could have been resolved with a telephone call . . . . The only conclusion that can be drawn is that the Forest Service is not actually interested in resolution of perceived issues in order to move the project forward. Rather, it is apparent that the intent is to kill any prospects of mining these minerals by subjecting me to an[] endless loop of obstacles.

Id. at ¶ 56.

## II. DISCUSSION

### A. The Court May Consider Evidence Outside the Pleadings to Determine Subject Matter Jurisdiction

"[I]n deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true only uncontroverted factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011) (citing Cedars–Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993)). The court "may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citing Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)). Further, in deciding a motion to dismiss for lack of subject matter jurisdiction, "disputed facts outside the pleadings are subject to the fact finding of the court." Engage Learning, 660 F.3d at 1355 (citing Cedars–Sinai, 11 F.3d at 1583-84). The Federal Circuit has noted that when a motion to dismiss challenges the jurisdictional facts alleged in the

11

complaint, "the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence." Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds, 846 F.2d at 748).

In the amended complaint, RNR argues that the Forest Service effectively "denied [RNR's] Plan of Operations in its entirety . . . ." Am. Compl. ¶ 56. The government disputes this statement, asserting that the Forest Service has not yet made a determination on RNR's plan because the application is incomplete, and thus the claim is not ripe. The Federal Circuit has found that this court does not have jurisdiction over takings claims that are not ripe. Estate of Hage v. United States, 687 F.3d 1281, 1285 (Fed. Cir. 2012) (citing Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004)). Because the government "denies or controverts the pleader's allegations of jurisdiction," defendant is "challenging the factual basis of the court's subject matter jurisdiction." Cedars–Sinai, 11 F.3d at 1583. Therefore, the court may look at the evidence of the Forest Service's actions in order to determine whether or not it has effectively denied RNR's plan of operation and, consequently, whether the case is ripe for review.

B. **Plaintiff's Takings Claim is Not Ripe for Review**

The Supreme Court and the Federal Circuit have found that a regulatory takings claim, as is alleged here, "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Estate of Hage, 687 F.3d at 1286 (quoting Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985)). Further, "[t]here is no dispute that 'when an agency provides

12

procedures for obtaining a final decision, a takings claim is unlikely to be ripe until the property owner complies with those procedures.'" McGuire v. United States, 707 F.3d 1351, 1359-60 (Fed. Cir. 2013) (quoting Morris, 392 F.3d at 1376).  However, the Federal Circuit has also found that if "the agency's decision makes clear that pursuing remaining administrative remedies will not result in a different outcome," attempting to fulfill those remaining administrative requirements is "futile" and the case may proceed as if the agency had issued a final decision.  Morris, 392 F.3d at 1376 (citing Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 739 (1997)).

Here, there is no dispute that the Forest Service has the authority to approve, approve with conditions, or deny RNR's proposal to conduct mining operations on Forest Service lands.  See 30 U.S.C. § 612(b); 36 C.F.R. §§ 228.4-228.5; see also Aloisi v. United States, 85 Fed. Cl. 84, 92 (2008) ("The Forest Service has the ultimate authority to approve or reject proposals to conduct mining operations in national forests." (citations omitted)).  As the Supreme Court has explained, mining "[c]laimants . . . take their mineral interests with the knowledge that the Government retains substantial regulatory power over those interests."  United States v. Locke, 471 U.S. 84, 105 (1985).  Thus the ripeness dispute here hinges on whether the Forest Service has issued a final decision rejecting RNR's plan of operation or, if it has not, whether requiring RNR to secure a final decision would be futile.[6]  As discussed below, the court finds that the Forest

---

[6] At issue here is whether the Forest Service has made a threshold determination to deny RNR's plan of operations, not whether RNR must comply with any administrative appeals procedure associated with the denial of that plan.

13

Service has not issued a final decision and that RNR's compliance with the Forest Service's requests for additional information would not be futile.

### 1. The Forest Service Requires Additional Information to Make a Final Decision

The government lists a number of deficiencies that it argues make RNR's application incomplete, making approval of the plan pursuant to 36 C.F.R. § 228.5 not possible. One of the key points of contention is over the need for a pilot processing plant to determine whether mining and smelting of the minerals at issue can be done on a production scale. The Forest Service argues that information about the pilot plant is necessary to evaluate the environmental impact of the proposed operations. In addition, though RNR's proposal includes plans to build a processing and smelting facility on BLM-administered lands, RNR has not submitted any plan of operation to the BLM. The Forest Service states that to complete its review of RNR's proposal, the Forest Service needs to be able to evaluate the impacts on Forest Service land of the proposed operations on adjacent BLM land. The government also argues that the additional information identified in the June 13, 2013 letter with regard to deficiencies in RNR's air quality, water quality, and waste analyses are legitimate deficiencies in RNR's plan of operations.

RNR argues that the construction of a pilot plant is not necessary and is simply a means for the government to delay processing its application. With respect to the other supposed deficiencies in RNR's plan, RNR first argues that by the time the Forest Service issued the June 19, 2013 memorandum, it was "simply too late to request additional information over two years after the plan of operations [was] filed." Pl.'s Opp.

14

31 (citing 36 C.F.R. § 228.5). RNR also characterizes the listed deficiencies as "hyper-technicalities designed to make sure that, not only will these claims never be mined, [but also] that Freeman and RNR will never be compensated for them." Id. Further, RNR argues, the issues raised by the Forest Service go beyond the requirements of the applicable regulations. Finally, RNR argues that the Forest Service should have been deemed to have made a final decision because the agency had already rejected Mr. Freeman's earlier plan of operations for his previous claims dating back to 1994, and the two plans are functionally identical.

Forest Service regulations require the agency to "analyze the proposal, considering the economics of the operation along with . . . other factors in determining the reasonableness of the requirements for surface resource protection . . . ." 36 C.F.R. § 228.5. While RNR disputes the need for the information the Forest Service has asked for, RNR does not have the final say on what the Forest Service requires. The Federal Circuit has found that "[g]overnmental agencies that implement complex permitting schemes should be afforded significant deference in determining what additional information is required to satisfy statutorily imposed obligations." Wyatt v. United States, 271 F.3d 1090, 1098 (Fed. Cir. 2001). In Aloisi v. United States, the court found that the Forest Service was entitled to seek a biological consultation, notwithstanding the plaintiff's objection that such a consultation was not required, before issuing a final decision on a prospective miner's plan of operations. 85 Fed. Cl. 84, 94 (2008). The court noted that the Forest Service is "given considerable deference in determining what information is necessary to approve a proposed plan of operations." Id. (citing Wyatt, 271 F.3d at

1098).  Likewise, in this case, the Forest Service must be given significant deference in determining what information is required to fulfill its regulatory and statutory role.

The Forest Service has raised a number of concerns about information relating to environmental issues missing from RNR's 2011 application, perhaps most notably RNR's failure to submit any information regarding the effects of its processing facility on BLM-managed lands.  The BLM informed Mr. Freeman in July of 2011 that he would need to provide BLM with a plan of operations for that facility, which he has still not done.  See Def.'s Mot. to Dismiss Ex. 5B.  Without information regarding the operation of this plant, the Forest Service is unable to evaluate the cumulative effects of RNR's proposal on Forest Service lands.  This deficiency alone shows that RNR's plan of operations is incomplete.

In discussing the requirement that an agency make a final decision before a takings claim can be ripe for review, the Supreme Court has explained that:

> Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property <u>depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property</u> . . . .  As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established.

<u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 620-21 (2001) (citing <u>Suitum</u>, 520 U.S. at 736 n.10) (internal citation omitted) (emphasis added).  Until RNR provides the requested information to the Forest Service, RNR cannot claim that the Forest Service has reached a final decision denying the RNR plan of operation.  Because the Forest Service has not

16

reached a final decision on RNR's proposed plan of operations, RNR's Fifth Amendment takings claim is not ripe.

### 2. RNR has not proven that it would be futile to comply with the Forest Service's information requests

RNR argues that "the Forest Service's entire course of conduct in regard to the mining of these claims . . . is designed to make sure they are never actually mined." Pl.'s Opp. 35. Therefore, RNR argues, submitting the additional information to the Forest Service would be futile.

The Federal Circuit has found that "a claimant can show its claim was ripe with sufficient evidence of the futility of further pursuit of a permit through the administrative process." Cooley v. United States, 324 F.3d 1297, 1302 (Fed. Cir. 2003). However, the Federal Circuit has found that "the futility exception simply serves 'to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" Howard W. Heck & Assocs., Inc. v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998) (emphasis in origina)(quoting S. Pac. Transp. Co. v. City of L.A., 922 F.2d 498, 504 (9th Cir. 1990)); see also George E. Warren Corp. v. United States, 341 F.3d 1348, 1351 (Fed. Cir. 2003) ("Futility occurs where the filing party already knows that the agency would deny its claim because the agency has already done so.").

Plaintiff argues that the Forest Service denied Mr. Freeman's initial plan of operations in 1999, which was functionally identical to the plan RNR submitted in 2011, and thus it is futile for RNR to comply with the Forest Service's request for additional

information. The court is mindful that Mr. Freeman needed to address some of these same issues in his prior efforts to obtain Forest Service approval of his (not RNR's) earlier plan of operations.  However, the issues of environmental concern in the 1990s may well be different in 2011, just as Mr. Freeman, on behalf of RNR, now argues that mining claims on the same land declared invalid in 1999 should now be deemed valid in 2011 due to changing conditions in the outside world.  The court cannot assume that the environmental issues are identical and that the Forest Service's environmental concerns in 2011 are not legitimate.

Plaintiff further argues that complying with the Forest Service's request is futile because the government has made it clear that it will not permit RNR to commence mining operations without a plan for a pilot plant and bulk sampling, which RNR maintains is unnecessary.  Plaintiff's sole focus on the pilot plant is misguided. Even if RNR is correct about pilot plant issue, RNR still must address the concerns the government has raised regarding the information needed to evaluate environmental impacts, particularly with respect to the operation of a processing plant on BLM-managed land along with the potential need to store and transport hazardous waste. The Forest Service identified these issues early on to RNR and RNR has simply ignored the requests for more information on these issues.

To the extent that RNR is arguing that the government never intends to issue a decision to authorize mining its argument also fails. First, the government in this case has explained the additional steps that RNR must take to complete its application and receive a final decision. Thus this case is different from <u>Washoe County v. United States</u>, 319

F.3d 1320, 1324 (Fed. Cir. 2003), on which RNR relies. In Washoe County, the court found that the government did not "identif[y] any further administrative step available to [the plaintiff] in order for it to have obtained further finality in the permit application process." Id.  The Federal Circuit distinguished Washoe from its earlier decision in Heck in which the Circuit rejected a futility argument where the plaintiff had elected not to complete a valid application. Heck, at 1472. Here, as set forth above, the Forest Service has laid out in detail, the information it needs to process RNR's application. RNR cannot simply elect not to complete the application process.

Second, RNR has not shown that the Forest Service's requests are merely a pretext to extend the process and prevent RNR from ever mining on Forest Service land.  See Wyatt, 271 F.3d at 1098 (noting that a taking may occur as a result of an "extraordinary delay" in an agency's issuance of a permit with a showing of bad faith (citing Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 803 (Fed. Cir. 1993))).  The court must presume that the information the agency is seeking is sought in good faith.  See Croman Corp. v. United States, 724 F.3d 1357, 1364 (Fed. Cir. 2013) (citing Am-Pro Protective Agency, Inc. v United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002)).  While the court understands that Mr. Freeman spent many years endeavoring to establish these claims, the mining claims at issue in this motion were made in RNR's name, not in Mr. Freeman's name, and the Forest Service has taken a reasoned and reasonable approach to evaluate RNR's proposal.  RNR cannot show that the Forest Service will never authorize RNR to mine. Ranger Bergstrom has declared under penalty of perjury that he will review the submissions he expects from RNR and that his decision is not yet final.

Bergstrom Decl. ¶¶ 17, 18.  There is nothing in the record to reverse the presumption of Ranger Bergstrom's good faith.   Accordingly, the court rejects RNR's contention that complying with the Forest Service's process would be futile.

## III.     CONCLUSION

For the reasons stated above, the government's motion to dismiss Count V of the amended complaint pursuant to Rule 12(b)(1) is **GRANTED**.  The case shall remained **STAYED** pending the outcome of the appeal in Freeman v. U.S. Department of the Interior, No. 15-cv-5140 (D.C. Cir. filed May 20, 2015).  The parties shall inform the court of the outcome of the appeal within ten days of issuance of the decision.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge